UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | | |
|---|---|---|
| WILLIAM LELAND, | ) | |
| | ) | |
| | ) | |
| v. | ) | Criminal  No. 03-33-B-W |
| | ) | |
| | ) | Civil No.   07-10-B-W |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| | ) | |

**RECOMMENDED DECISION ON 28 U.S.C. § 2255 MOTION**

William Leland, who is serving a 252-month sentence for federal firearms and
controlled substance offenses, has filed a petition pursuant to 28 U.S.C. § 2255 seeking to
vacate the judgment of conviction entered in this court on October 31, 2005.  Leland's
petition, filed with the assistance of counsel who represented him at sentencing and on
appeal, raises four grounds, the first, a reprise of his claim that he should have been
allowed to withdraw his guilty plea, and three additional claims of ineffective assistance
of trial counsel.  Leland requests the court hold an evidentiary hearing because "a fact
finding is necessary to sort out the exact sequence of events and decisions."  (Reply
Mem. at 6, Doc. No. 7).   Seeing no need to hold an evidentiary hearing based upon the
existing record, I now recommend the court deny the request and also deny the motion to
vacate the judgment.

**Background**

The background of this case can be found summarized in United States v. Leland,
370 F.Supp.2d 337 (D. Me. 2005) and United States v. Leland, No. 05-2670, 2006 WL

2709462 (1st Cir. Sept. 22, 2006).   The First Circuit summarily denied Leland's direct appeal, noting that the District Court had accurately sized up the case when it issued its order denying Leland leave to withdraw his guilty plea.  However, the First Circuit did note that Leland raised for the first time on appeal claims of ineffective assistance of counsel and that it would not consider such claims because they had not been raised in the District Court.  Thus, the decision of the First Circuit bars further consideration of ground one of the 28 U.S.C. § 2255 motion and invites this court's close scrutiny of the other three grounds.

Discussion

**1. The Withdrawal of the Guilty Plea**

Leland claims he should have been permitted to withdraw his guilty plea and, apparently, that his attorney should have pursued an interlocutory appeal of the District Court's denial of his motion to withdraw the guilty plea.  The District Court carefully considered all of Leland's claims about why he should be allowed to withdraw his guilty plea and concluded there was no "fair and just reason for withdrawal."  Leland, 370 F.Supp.2d at 347.  There is no reason, absent ineffective assistance of counsel, to review that conclusion which has already been affirmed by the appeals court.  Nor is there any reason to spill ink over the abortive attempts, both by counsel and by Leland, pro se, to take an interlocutory appeal of the decision denying leave to withdraw the guilty plea. The issues surrounding withdrawal of the guilty plea were ultimately fully considered on the direct appeal taken in a timely fashion after the imposition of sentence.

2

**2.  Counsel's failure to explain the contents of the plea agreement & to give proper advice regarding the entry of a guilty plea**

The District Court was satisfied at the time of the Rule 11 proceeding that Leland had knowledge of the consequences of the guilty plea. Leland, 370 F.Supp. 2d at 342. The Court also found as a fact that before he pled guilty Leland had signed the plea agreement voluntarily, had read the agreement before he signed it, had understood all its contents, and had intended, at the time he signed the agreement, to agree to all its terms and conditions.  Id. at 347.   In light of this factual finding by the Court, Leland's conclusory assertions to the contrary in ground two ring hollow.  Leland does not provide any new factual assertions that were not already known to the Court by the time of sentencing hearing.

> "[T]he accuracy and truth of an accused's statements at a Rule 11 proceeding in which his guilty plea is accepted are 'conclusively' established by that proceeding unless and until he makes some reasonable allegation why this should not be so. Stated otherwise, we hold that a defendant should not be heard to controvert his Rule 11 statements in a subsequent § 2255 motion unless he offers a valid reason why he should be permitted to depart from the apparent truth of his earlier statement[s]."

United States v. Butt, 731 F.2d 75, 80 (1st Cir. 1984) (quoting Crawford v. United States, 519 F.2d 347. 350 (4th Cir. 1975)).

Although he complains that he only pled guilty because his attorney "convinced" him to do so, that assertion alone does not amount to a claim of ineffective assistance in the face of this Court's findings regarding the voluntariness of the guilty plea.  Butt, 731 F.2d at 80 n.5. ("Evidentiary hearings have been granted to § 2255 appellants who have claimed that their plea was induced by attorney misrepresentations only when the

allegations were highly specific and usually accompanied by some independent

corroboration.").  By the time of the sentencing, Leland was represented by new counsel

who attempted to raise assertions about prior counsel's performance vis-à-vis the plea

agreement.  Regarding the stipulations about drug quantity and trial counsel's other

alleged incompetence regarding the entry of the guilty plea which apparently forms the

primary basis of this ground of ineffective assistance of counsel, the following exchange

between Leland and the Court occurred at the sentencing hearing:

> MR. NAPOLITANO: He doesn't have to testify.
> THE COURT: Mr. Leland, just so you know, I--as I've indicated, I--my
> impression of you is that you're a bright individual and that you follow an
> awful lot of this. But just so that I can limit you, because I don't want you
> to go on on matters that are not relevant to the Court, this is only on the
> issue of Christopher Largay. Your lawyer has brought a motion saying that
> I ought to, in effect, not enforce the stipulations that are set forth and
> which I've read earlier that are--that are reflected in the plea agreement
> because of Mr. Largay's incompetence, all right? You have something you
> want to tell me on that?
> DEFENDANT: Yes, I do. On January 26th, about three o'clock in the
> afternoon, we sat out back in one of these offices out here—
> THE COURT: And that--this is the date of the plea?
> DEFENDANT: Yes. We had gotten 3,000 pages of <u>Jencks</u> materials, and I
> was in a holding cell at the Penobscot County Jail. Mr. Largay come over
> for approximately an hour. We didn't have time to read the <u>Jencks</u> material
> at all. Then we had to meet with Mr. Perry and the DEA agent named
> Brian Tully [phonetic].
> And at that agreement the only reason I pled guilty was because Mr. Perry
> said that he had enough evidence to arrest my son, and if I pled guilty, he
> would leave my son alone. And I asked him if I could plead guilty to just
> the charges I--that I had actually done, and he said, no, I have to plead
> guilty to the whole thing. And then I said to him, "Well, how about the
> quantity? I don't agree with the quantity." He said, "You can argue that at
> sentencing." I said okay. And come to find out, I got a Presentence
> Investigation Report about two months after I agreed to plead guilty
> because Mr. Largay told me that was the best thing to do, and he had
> never read the <u>Jencks</u> material either. I didn't know, your Honor, I got--I
> got an indictment, number one indictment, for possession with the intent
> to distribute and the forfeiture. I was in the Piscataquis County Jail. Three
> or four months later I got a second--a superseding indictment. I had no

4

idea about those charges, what kind of evidence they had against me on those charges. And then about two months later, I got a third--another superseding indictment, a second superseding indictment. Ultimately that one, the whole third indictment, got dropped on its own because Mr. Largay never put a motion in to drop it. It got dropped on its own. On its-- I don't know why. And I still don't know the counts, the evidence they had to which count, I never read the material. I was depending 100 percent on my lawyer because I was put in maximum security at state prison right after that I got the second superseding indictment. I only saw Mr. Largay three times in that time, in that time period. And it was for an hour each time. And I still right to this day I have no idea what evidence goes to what charge, who belongs to that charge. I still don't have any idea right to this day, your Honor, because I haven't had a chance to go over all of the material with my lawyer. And I was under the understanding that I could appeal. I was under the understanding that I could argue at sentencing the amount of drugs that I was being charged for because I've never been caught with any drugs in my possession at my house or in my vehicle unless I got it--that day that they got it on the initial stop. They just took the vehicle and then two days later they said they got a search warrant and that's what they found. But the stipulations that I couldn't--I couldn't argue quantity, that was never mentioned to me. Christopher Largay--that was put in paperwork against my knowledge. I didn't know that was put in there. I never read that. Mr. Largay just told me to sign it. I was rushed. This was three o'clock in the afternoon when we were having this plea agreement, and at four o'clock in the afternoon Bob Holt [phonetic] came out and told me we had better get this done now, and I asked him if we could continue it for tomorrow, and Mr. Perry said, "No, we're gonna be picking the jury tomorrow and you're gonna be going to trial, and I'm gonna charge your son with a crime." So I hurried up and pled guilty. I didn't get to read any of that paperwork. I was--I was told to sign it by my lawyer. And I was depending 100 percent on my lawyer.

(Sentencing Tr. at 24-27.)

Following Leland's statement, the Government's attorney reviewed with the court the transcript of the Rule 11 proceeding wherein Leland represented to the court that he fully understood the plea agreement and that he only signed it after reading the entire document.  (Id. at 27-30).

Leland explained his conduct at the time of the Rule 11 as follows:

DEFENDANT: I did--I did tell you on January 27th that I read that because
Christopher Largay told me to tell you. I didn't read--I didn't have time to read
that. I was only in this room out back for less than an hour. And when Mr. Perry
said that I was grasping at straws, you can reflect on the record that he did, in fact,
arrest my son afterwards for a charge that happened two years before. So I'm not
grasping at straws, I'm telling you the truth. He did say that, that he would leave
my son alone, at that plea agreement. Christopher Largay will testify to that
because Chris told me that. Thank you.

(Id. at 31).

After a pause lasting approximately five minutes, the Court ruled on Mr. Napolitano's

motion to exclude consideration of stipulations with respect to quantity of drugs.  (See Docket

No. 327.)  The basis of that motion was that trial counsel had rendered ineffective assistance

when he entered into stipulations regarding drug quantity that limited the defendant's right to

have an evidentiary hearing with cross-examination of the witnesses involved in quantity

allegations.

The Court noted the following:

MR. NAPOLITANO: I think you've made a ruling on the motion.
THE COURT: I did make that ruling on the motion.
MR. NAPOLITANO: That ends the stipulation and the quantity argument.
THE COURT: Well, your--the--what I ruled on was your motion, which was filed
on October 26th--
MR. NAPOLITANO: Right.
THE COURT: --whether or not Mr. Largay's incompetence justified an effective
withdrawal of the plea. And I've ruled that the earlier--in effect, the earlier order
which denied the motion to withdraw plea stands and is unaffected by the
allegation that Mr. Largay was incompetent.
MR. NAPOLITANO: The motion also addressed the stipulations, too, Judge. And
I think you just made a ruling on that based upon the Rule 11 transcript.
THE COURT: Well, let me--let me address that briefly. Do you want to--do you
want to argue that separately?
MR. NAPOLITANO: No, that's fine, your Honor.
THE COURT: Let me be specific about that issue as well because at pretrial--at
the presentence conference the question of whether the stipulations that are
reflected in the plea agreement would be enforced was raised.

(Id. at 35-36).

This Court can draw on its own first-hand knowledge of counsel's earlier performance during the Rule 11 proceedings in weighing the merits of this claim.  See United States v. McGill, 11 F.3d 223, 225 (1st Cir. 1993).  Because Leland's written motion to vacate contains no new facts presented under oath and because of the Court's findings during the Rule 11 proceeding, the hearing on the motion to withdraw the guilty plea, and the sentencing proceedings, there is no reason for me to convene an evidentiary hearing on the question of ineffective assistance regarding the stipulations of fact in the plea agreement or trial counsel's advice regarding entry of a guilty plea.  The Court has rejected the notion that Attorney Largay's performance fell below acceptable standards when he advised Leland regarding the stipulations and the entry of the guilty plea.  Leland offers nothing new on that score by way of additional facts in his motion or memorandum.

### 3.  Counsel's failure to file a timely motion to withdraw the guilty plea

Leland represents that once he realized the plea agreement locked him into a sentence without the right to appeal, he told his lawyer to file a motion to withdraw the plea.  According to Leland his attorney kept putting him off and did not file the appeal until one year later.  Leland notes that both the District Court and the Court of Appeals said that the lengthy time interval between the entry of the plea and the motion to withdraw was part of the rationale for denying the motion to withdraw the guilty plea.  Once again the motion to vacate is not plowing entirely new ground because the sentencing court and the appeals court were both aware that Leland alleged at the time of the motion to withdraw the guilty plea that he had told his counsel he wanted to withdraw the plea at least approximately six months prior to the date when the motion was finally filed.

The District Court explained the chronology of events from the January 27, 2004, entry of the guilty plea forward to the motion to withdraw that plea on January 15, 2005, in the following terms:

> Following acceptance of the guilty plea, the Court ordered preparation of a Presentence Investigation Report. The Report was prepared on May 4, 2004 and revised on May 26, 2004. Following a June 14, 2004 Presentence Conference, the United States Supreme Court issued Blakely v. Washington, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004) and the Court reset a Presentence Conference for July 20, 2004 to discuss Blakely implications. The parties agreed the case potentially presented Blakely issues and ultimately decided to await clarification from the United States Supreme Court. On January 14, 2005, after United States v. Booker, 543 U.S. 220 (2005), this Court reset the Presentence Conference for February 2, 2005 and on January 19, 2005, Mr. Leland filed the pending Motion to Withdraw Guilty Plea. The Defendant requested oral argument, which was held on March 10, 2005.

Leland, 370 F.Supp.2d at 340.

Leland now says that he told his attorney to file the motion to withdraw his guilty plea when he realized the plea agreement meant that he had waived his right to appeal his sentence.[1] He does not offer any allegations as to when that knowledge came to him or when he first instructed his counsel to file a motion to withdraw the guilty plea on that basis. However, it appears the record conclusively establishes the earliest date to have been June, 2004.

The record provides this guidance on the issue. We can infer that by July 27, 2004,[2] Leland had definitely instructed his attorney that he wanted to file a motion to withdraw his guilty plea. (See Docket No. 290, Tr. Mt. Withdraw Guilty Plea, at 13-14.) Counsel made a strategic decision to "sit on" the motion until the Booker/Fanfan case was resolved. This court can make its own determination as to whether it would have made any difference if a motion to

---

[1]      The Government points out that in fact Leland's right to appeal his sentence was never waived because the trigger for his waiver of that right was if the sentence imposed was less than 210 months. Because Leland was sentenced to 252 months the waiver did not apply. (See Docket No. 207, Plea Agreement ¶ 6).

[2]      There is some stray reference to a September 2004 presentence conference, but no such conference was ever held according to the docket. Either the post-Blakely July 27, 2004, conference or the pre-Blakely June 14, 2004, conference was the occasion when counsel first mentioned that Leland would be filing a motion to withdraw the guilty plea.

withdraw the guilty plea had been filed in June 2004 alleging the same grounds as the January

2005 motion and/or the additional grounds that Leland didn't understand he had waived his

appeal rights regarding sentence if the sentence had been less than 210 months and his right to

challenge the quantity of drugs by entering into the written stipulation.   Indeed at the sentencing

hearing this Court noted that Leland then contended that he had instructed his counsel to file the

motion to withdraw the guilty plea in June 2004.

> THE COURT: The second allegation is that Mr. Largay failed to file a motion to
> withdraw the guilty plea in June 2004 when he was requested to do so by the
> defendant. The chronology here is that the defendant pleaded guilty on January
> 27, 2004. Mr. Leland states that he requested Mr. Largay to file a motion to
> withdraw guilty plea in June of 2004. The motion was not filed, however, until
> January 19, 2005. The motion was based on five separate grounds: Newly-
> discovered evidence, discrepancy in Jencks material, seizure of film and camera,
> the mandatory nature of the Sentencing Guidelines at the time of the entry of the
> plea, and a failure to disclose crimes and activities of the Government's
> confidential informants. The question the Court has to ask itself and answer is
> whether the delay from June 2004 to January 2005 made a difference. And the
> answer to that is no. None of the issues raised in the motion to withdraw were
> changed with the delay with the exception of the Booker opinion which actually
> allowed the defendant to make the mandatory sentencing guideline claim which
> he could not have made had the motion been made in June of 2004. The Court's
> opinion of April 7, 2005, addressed the timing of the motion and noted that the
> delay between the plea and the motion was 12 months. And the Court in its order
> reviewed First Circuit authority on timing issues regarding the timing of the
> motion. The Court found cases in which the First Circuit has rejected as too long
> what it's--what it terms the relevant temporal gap, where the gap was 8 months, 6
> months, 5 months, 4 months, 14 weeks, 2 months, 8 weeks, 3 weeks and even 13
> days. Under that analysis, the delay between January and June, a delay of
> approximately six months, would have been--would have not made a difference in
> terms of the Court's determination as to whether the motion was timely.

(Sentencing Tr. at 12-13.)

Given these findings by the Court and Leland's failure to allege anywhere in his current

motion that he ever instructed his attorney to file a motion to withdraw the guilty plea prior to

June 2004, an evidentiary hearing is not warranted.  The Court essentially credited Leland's

current version that all of the delay between June 2004 and January 2005 should be attributed to

his counsel's "foot dragging" and still determined that there were inadequate grounds to allow the motion to withdraw the guilty plea. Thus, even though the Government argues the delay should be attributed to Leland's own strategic decisions and Leland maintains he was held hostage by his attorney, the resolution of that factual dispute would do nothing to change the legal issue before this court regarding revisiting the motion to withdraw the guilty plea.

## 4. Counsel's failure to keep petitioner informed, take action as requested, and misplaced reliance on <u>Booker</u> changing the legal landscape

The fourth ground of Leland's petition appears as a catch-all ineffective assistance claim hallmarked by prior counsel's general "inattentiveness." A claim stated in such broad generalities does not meet the <u>Strickland v. Washington</u> standard for ineffective assistance of counsel. 466 U.S. 668 (1984) (requiring a petitioner to establish both deficient performance and prejudice). In bringing this motion Leland has an obligation to "do more than proffer gauzy generalities or drop self-serving hints that a constitutional violation lurks in the wings." <u>David v. United States</u>, 134 F.3d 470, 478 (1st Cir. 1998). Leland's plaints give no detail at all as to specifically what his prior counsel did or did not do, let alone suggest how Leland was possibly prejudiced by the attorney's conduct.

## <u>Conclusion</u>

For the reasons above I recommend that the Court **DENY** Leland 28 U.S.C. § 2255 relief.

## <u>NOTICE</u>

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within ten (10) days of being served with a copy thereof. A responsive memorandum shall be filed within ten (10) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

June 13, 2007.                                    /s/Margaret J. Kravchuk
                                                  U.S. Magistrate Judge